UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

MARK A. JOHNSON,

                            Plaintiff,                            05-CV-6275

v.                                                           **DECISION**
                                                             **And ORDER**

JO ANNE B. BARNHART
COMMISSIONER OF
SOCIAL SECURITY,

                            Defendant.
_____

## INTRODUCTION

Plaintiff, Mark A. Johnson ("Johnson" or "plaintiff") brings this action pursuant to the Social Security Act, (codified at 42 U.S.C. § 1381 et seq.) claiming that the Commissioner of Social Security improperly denied his application for Supplemental Security Income benefits. Specifically, Johnson alleges that the decision of an Administrative Law Judge ("ALJ") who heard his case was erroneous because it was not supported by substantial evidence contained in the record, or was legally deficient, or in the alternative, remand is warranted by the newly submitted medical evidence.[1]

The Commissioner moves for judgment on the pleadings on grounds that the ALJ's decision was correct, was supported by substantial evidence, and was made in accordance with applicable law. Johnson opposes the defendant's motion and seeks an order reversing the decision of the ALJ and remanding the case for immediate calculation of benefits, or in the alternative, for further proceedings pursuant to sentence six of 42 U.S.C. § 405(g).

---

[1] This case was transferred to the undersigned by the Honorable David G. Larimer, United States District Court for the Western District of New York by Order dated January 10, 2008.

**BACKGROUND**

On April 25, 2003 plaintiff Mark A. Johnson, a forty-six year old with a high school equivalent education, filed an application for supplemental security income benefits claiming that he became unable to work as of November 1, 2001 due to post-traumatic stress disorder, major depression, heart condition, osteoarthritis of the knees, status post left knee replacement, varicose veins, diverticulitis/gastritis and musculoskeletal problems. (Tr. 16-17, 101-03). The period at issue in this case is from April 25, 2003 to May 28, 2004. (Tr. 16). The application was denied initially by the Social Security Administration. (Tr. 16, 64, 79-82). Plaintiff requested an administrative hearing which was held on March 16, 2004, at which hearing plaintiff was represented by an attorney. (Tr. 29-63, 83-93).

On the basis of the hearing and the medical record, the ALJ found that although Johnson suffered from the severe impairments of osteoarthritis of the knees, status post right knee arthroscopy, post traumatic stress disorder, major depression, recurrent cocaine and alcohol dependence in remission, and degenerative changes in the lumbar spine and hips, he did not suffer from any condition or combination of conditions that were equivalent or more severe than any of the listed impairments identified in the Listing of Impairments, Appendix 1, Subpart P, Regulation No. 4. (Tr. 27). The ALJ held that the plaintiff has the residual functional capacity to perform a significant range of sedentary work and that there are a number of jobs in the national economy that the plaintiff could perform. (Tr. 28). On April 1, 2003 Johnson's appeal of the ALJ's decision to the Social Security Appeals Board was denied, and plaintiff timely filed this action. (Tr. 7-10).

**DISCUSSION**

I.      Jurisdiction and Scope of Review

42 U.S.C. § 405(g) grants jurisdiction to district courts to hear claims based on the denial of

Social Security benefits.  Additionally, the section directs that when considering such a claim, the court must accept the findings of fact made by the Commissioner, provided that such findings are supported by substantial evidence in the record.  Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938).  Section 405(g) thus limits the court's scope of review to determining whether or not the Commissioner's findings are supported by substantial evidence.  See, Mongeur v. Heckler, 722 F.2d 1033, 1038 (2nd Cir. 1983) (finding that the reviewing court does not try a benefits case de novo).  The court is also authorized to review the legal standards employed by the Commissioner in evaluating the plaintiff's claim.

The court must "scrutinize the record in its entirety to determine the reasonableness of the decision reached."  Lynn v. Schweiker, 565 F.Supp. 265, 267 (S.D.Tex.1983) (citation omitted).  Defendant asserts that his decision was reasonable and is supported by the evidence in the record, and moves for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.  Under Rule 12(c), judgment on the pleadings may be granted where the material facts are undisputed and where judgment on the merits is possible merely by considering the contents of the pleadings.  Sellers v. M.C. Floor Crafters, Inc., 842 F.2d 639 (2nd Cir. 1988).  If, after a review of the pleadings, the court is convinced that "the plaintiff can prove no set of facts in support of [his] claim which would entitle [him] to relief," judgment on the pleadings may be appropriate.  See, Conley v. Gibson, 355 U.S. 41, 45-46 (1957).  Because the court determines that the findings of the Commissioner are supported by substantial evidence, judgment on the pleadings is hereby granted for the defendant.

  II. <u>The Commissioner's Decision to Deny Plaintiff Benefits was Supported by Substantial Evidence in the Record.</u>

The ALJ made the determination based on the evidence before her that the plaintiff did not suffer from a disability under the Social Security Act for the period of April 20, 2003 to May 28, 2004.  A disability is defined by 42 U.S.C. § 423(d) as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months…" 42 U.S.C. § 423(d) (1991).  The ALJ found that the plaintiff was not engaged in substantial gainful since the onset of disability and that the plaintiff's allegations regarding his limitations are not totally credible.  (Tr. 27).  The ALJ determined that plaintiff's osteoarthritis of the knees, status post right knee arthroscopy, post traumatic stress disorder, major depression, recurrent, cocaine and alcohol dependence in remission, and degenerative changes in the lumbar spine and hips were severe impairments; that plaintiff's conditions either individually or in combination with her other impairments did not meet or equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4; that plaintiff did not have the capacity to perform her past work, and that plaintiff retained the functional capacity to perform jobs that exist in significant numbers in the national economy including a significant range of sedentary work activities.  (Tr. 27-28).

"In reviewing decisions of the Commissioner, this Court cannot consider new evidence not made part of the administrative record."  <u>Nunez v. Barnhart</u>, 2007 WL 313459 (S.D.N.Y. 2007); *quoting* <u>Madrigal v. Callahan</u>, 1997 WL 441903, 7 (S.D.N.Y. 1997).  Accordingly, the additional medical records submitted by the plaintiff have not been considered in the determination of whether the ALJ's decision was supported by substantial evidence.

On April 11, 2003 Johnson underwent right knee arthroscopy for osteoarthritis at St. James Mercy Hospital. (Tr. 579-82, 1046-48). Dr. John Halpenny concluded from this surgery that the plaintiff has osteoarthritis, a defect in the lateral femoral condyle and lateral tibial plateau, and a meniscus tear in the lateral meniscus in his right knee. (Tr. 581, 1048). At a follow-up appointment with Dr. Halpenny on April 18, 2003 the plaintiff reported that there were no neurologic symptoms and that he was not "doing too badly". (Tr. 1044). Johnson was using a cane to ambulate and was taking Hydrocodone and Celebrex to reduce his level of pain. Id. On April 25, 2003 the plaintiff was seen by Dr. Halpenny and reported that he had not experienced any locking, catching or giving way in his right knee and no neurologic symptoms. (Tr. 1043). After examining Johnson, Dr. Halpenny noted that he ambulated with a limp on his right side, lacked ten degrees of full extension, his flexion was 100 degrees, he did not have much tenderness to palpation, except along the joint lines when he walked, and concluded that his right leg was neurovascularly intact. Id. On May 29, 2003 the plaintiff was again seen by Dr. Halpenny. (Tr. 1042). Dr. Halpenny noted that Johnson had swelling in the knee, but the ligaments were stable. Id.

On May 19, 2003 Johnson was examined by Dr. Daniel Curtin for a routine physical examination. (Tr. 1053). Plaintiff complained that he was told he has ischemia and also wanted to have his liver function checked. After examination Dr. Curtin noted that the plaintiff's heart was regular with normal S1 and S2 sounds, he had no murmurs, rubs or gallops, and a normal PMI. Johnson's range of motion in his extremities was normal, his reflexes were 2+ and symmetrical, and he had 5 out of 5 motor strength and intact sensation. Dr. Curtin diagnosed the plaintiff with an onset of hypertension. Id.

On June 26, 2003 Johnson was taken to Strong Memorial Hospital for catherization of the left ventriculography, a coronary angiography, and a left heart catherization. (Tr. 1006-7, 1051-52).

These procedures were performed by Christopher Cove, M.D. Dr. Cove concluded that the plaintiff had normal coronary anatomy, no significant regional wall motion abnormalities, no significant mitral regurgitation, and normal left ventricular systolic function. (Tr. 1007).

On June 6, 2003 the plaintiff entered the Veteran's Administrative Medical Center ("VAMC") due to chronic pain in his right knee. (Tr. 1077). At this examination the plaintiff complained that the pain in his right knee was a four and was a constant dull pain. Id. The plaintiff attended a physical therapy consultation on June 11, 2003. (Tr. 1081-83). The examining therapist, Dr. Matthew McCloskey noted that the plaintiff had active range of motion upon knee extension and was within normal limits bilaterally. (Tr. 1082). Flexion of the right knee was minimally limited because of a cyst behind the knee. Dr. McCloskey opined that the plaintiff would benefit from a therapeutic exercise program, electrical muscle stimulation for strengthening and isokenetic strengthening as necessary. Id. At therapy on June 30, 2003 the plaintiff reported improvement in his right knee.

On June 25, 2003 Johnson underwent a consultative orthopedic examination by George A. Sirotenko, D.O. (Tr. 997-1000). Dr. Sirotenko noted that the plaintiff had been diagnosed with cardiac ischemia by a stress test. (Tr. 997). Dr. Sirotenko found that the plaintiff walks with a bilateal antalgic gait and used a cane, he was able to briefly walk on his heels and toes and could only squat fifty percent. Johnson did not need assistance dressing or getting on and off the examining table, but did need assistance for arising from a chair. (Tr. 998-99). Dr. Sirotenko noted that the plaintiff was able to cook, clean, bathe, dress, do laundry and shopping, and attend church and group meetings. (Tr. 998). The plaintiff's hand and finger dexterity were intact and his grip strength was 5 out of 5 bilaterally. (Tr. 999). He had a full range of motion of the cervical spine and upper extremities, his reflexes were physiologic and equal, his muscle strength was 5 out of 5 in the

proximal and distal muscles, and there was no evidence of inflammation, effusion, instability or muscle atrophy or sensory abnormalities. Johnson's lumbar spine range of motion was forward flexion to 40 degrees, extension to 10 degrees, and lateral rotation to 15 degrees. The plaintiff's straight leg raising was negative bilaterally, and his lower extremity strength was full with no muscle atrophy or sensory abnormality. Id.

Dr. Sirotenko diagnosed the plaintiff with a history of post traumatic stress disorder and depression, a history of bilateral osteoarthritis in the knees with moderate limitations in range of motion, apparent cardiac ischemia and a history of chest pain. Id. Dr. Sirotenko opined that the plaintiff should avoid repetitive kneeling, squatting or bending, climbing stairs, inclines or ladders, activities beyond a mild degree of physical exertion, and would benefit from sedentary activities. (Tr. 1000). The plaintiff had no limitations with communication skills, or upper extremity use and fine motor activity. Dr. Sirotenko noted that the plaintiff could push, pull, or lift objects of a moderate degree on an intermittent basis. Id.

On the same day as the physical consultative examination the plaintiff underwent a consultative psychiatric evaluation with psychologist, Christine Ransom. (Tr. 1001-05). Dr. Ransom noted that the plaintiff's socialization was improving with therapy and treatment. (Tr. 1003). Johnson reported that he was able to dress, bathe, and groom himself, cook and prepare food, do light cleaning and laundry and shop for groceries. (Tr. 1004). Upon examination the plaintiff was cooperative, but emotionally labil with episodes of anger and crying. (Tr. 1003). Johnson's speech was intelligible and fluent and his thought processes were coherent and goal directed with no evidence of hallucinations, delusions or paranoia. The plaintiff's attention, concentration, immediate and remote memory were all intact, but his recent memory was moderately impaired. Id.

Dr. Ransom concluded that the plaintiff's intellectual functioning appeared to be average and

diagnosed the plaintiff with major depressive disorder and post traumatic stress syndrome, currently moderate. (Tr. 1004). Dr. Ransom opined that the plaintiff was able to follow and understand simple directions and instructions, perform simple rote tasks, maintain attention and concentration for simple tasks, consistently perform simple tasks and learn new simple tasks. In Dr. Ransom's estimation the plaintiff would have moderate difficulty performing complex tasks, relating adequately with others and appropriately dealing with stress dye to his mental impairments. Id.

On July 1, 2003 the plaintiff underwent an x-ray of his left foot, which revealed a deformity of the fifth metatarsal consistent with an healed fracture. (Tr. 1089). On July 8, 2003 Johnson reported to Dr. Halpenny that his knee was "doing pretty good" and that he was getting stronger and experiencing less pain. (Tr. 1041). Johnson indicated he could ride his bike without much difficulty and did not have any neurological symptoms, locking, catching or giving way and no swelling or pain in the back of his knee. Upon examination Dr. Halpenny noted that the plaintiff ambulated well with a slight limp on his right side, there was no swelling, erythema, ecchymosis, and no obvious bony deformities. Johnson had good knee extension, could flex to over 100 degrees, his right knee strength was decreased to 3-4 out of 5 as compared to the left, he had tenderness along the lateral joint line, but no posterior swelling or tenderness. Id.

Johnson attended various therapy sessions on May 8, 2003, July 11, 2003, August 6 and 13, 2003. (Tr. 697, 1061, 1064, 1069). On May 8, 2003 the plaintiff attended a group therapy session at the VAMC at Bath where he expressed a willingness to take advantage of assistance from other group members and the group coordinator. (Tr. 697). On June 4, 2003 the plaintiff attended a group Post-Traumatic Stress Disorder therapy session at the VAMC at Bath and was reportedly very active, including identifying with group discussion and discussing his specific reaction to news of a group member's death. (Tr. 1078). Johnson attended another PTSD session on August 6, 2003 and

discussed how he was becoming aware of his irritability with his post traumatic stress disorder and was beginning to work on reducing it. (Tr. 1063). On August 20, 2003 the plaintiff was diagnosed with a history of post traumatic stress disorder, depression, substance abuse and chronic pain. (Tr. 1057-58). In this report it was noted that the plaintiff had expressed anger towards one of the doctors, because the plaintiff alleged the doctor accused him of exaggerating his physical problems in order to seek compensation. (Tr. 1059).

On July 21, 2003, Dr. Sury Putcha assessed the plaintiff's residual functional capacity. (Tr. 1011-16). Dr. Putcha noted that the plaintiff's knees were stable with full flexion and extension to about 120 degrees. (Tr. 1013). Dr. Putcha opined that the plaintiff could occasionally lift and/or carry up to ten pounds, sit for about six hours and stand and/or walk for a total of two hours in an eight hour workday. (Tr. 1012). Due to the plaintiff's arthritis in his knees Dr. Pucha concluded that the plaintiff could climb, balance, stoop, kneel, crouch, and crawl occasionally. (Tr. 1013).

On July 24, 2003, Dr. Ed Kamin assessed the plaintiff's mental residual functional capacity after reviewing Johnson's file. (Tr. 1018-35). Dr. Kamin concluded that the plaintiff had moderate limitations in his ability to understand, remember and carry out detailed instructions, work in coordination with others without being distracted, accept instructions and respond to criticism from supervisors, ability to get along with coworkers without distracting them or exhibiting behavioral extremes, respond appropriately to changes in the work setting, travel to unfamiliar places, and set realistic goals or make plans independently. (Tr. 1018-19). Johnson had moderate limitations in maintaining social functioning and maintaining concentration, persistence or pace. (Tr. 1032).

Johnson was admitted to the VAMC at Hudson Valley on August 28, 2003 for treatment for his post traumatic stress disorder. (Tr. 1135-53). In a comprehensive evaluation with Dr. David Levy, the plaintiff complained of symptoms of flashbacks and recurrent memories, difficulty trusting,

emotional ability, anger and irritability accompanied by physical outbursts, hyper vigilance, hearing voices, chronic depression, chronic anxiety, and sleep disturbance. At this time Johnson was taking Wellbutrin and Seroquel. Id. Upon examination Dr. Levy found the plaintiff was anxious and depressed, his thought processes were coherent, his insight and judgment was fair and coherent, and his cognition was grossly intact. (Tr. 1141). Dr. Levy diagnosed the plaintiff with post traumatic stress disorder, major depression, recurrent, and cocaine dependence. Johnson was admitted to the ward to stabilize his psychiatric condition. (Tr. 1140). On September 3, 2003 the plaintiff was evaluated at VAMC at Hudson Valley. The plaintiff was found to have a mild impairment due to his intrusive thoughts, nightmares, social isolation, panic/anxiety, depression and alcohol dependence. (Tr. 1123). The plaintiff was seen again at the VAMC at Hudson Valley on September 16, 2003 where it was noted that the plaintiff's social isolation had reduced and his sleep had increased due to medication. (Tr. 1093).

On August 9, 2003 the plaintiff attended a Relapse Prevention Group, at which he was an active participant. (Tr. 1133). Johnson also attended a group psychotherapy session later on that day. Id. Johnson was evaluated by a team of treatment members on September 2, 2003 regarding his goals and discharge status. (Tr. 1120-24). The discharge plan was to return to independent living in the community and resume outpatient treatment for post traumatic stress disorder and alcohol dependence at the VAMC at Bath. (Tr. 1124).

Vocational expert, David Festa testified at the administrative hearing on March 16, 2004). (Tr. 57-62). Festa testified that an individual with the plaintiff's education and past relevant work experience, who could not travel to unfamiliar places and could not set his own goals, that could lift up to twenty pounds occasionally, stand and walk no more than two hours a day and sit for a maximum of six hours a day, could kneel, squat, bend, and climb stairs occasionally, could not have

concentrated exposure to environmental respiratory irritants, could only perform routine, repetitive, unskilled work, which required no interaction with the public and only occasional interaction with coworkers or supervisors and involved no more stress than is typically found in routine, repetitive, unskilled work could perform the jobs of lens inserter, preparer, and surveillance systems monitor. (Tr. 58-59).

The medical evidence in the record provides substantial evidence to support the ALJ's decision that the plaintiff was not disabled for the period April 24, 2003 to May 28, 2004. The ALJ also correctly held that the plaintiff does not meet the B or C criteria of listings 12.04 and 12.06. There is substantial psychological evidence in the record to support this conclusion, including the opinions of the consultative examiners and the records of treatment at Hudson Valley VAMC and the Bath VAMC.

   III.   The New Evidence Submitted is not Material and Does Not Justify a Remand.

For a court to order the Secretary to consider new evidence in a sentence six remand, the evidence must be both new and material, and good cause must be shown for the failure to produce the evidence during the earlier administrative proceedings. 42 U.S.C. § 405(g); Tirado v. Bowen, 842 F.2d 595, 598 (2nd Cir. 1988); Mongeur v. Heckler, 722 F.2d 1033, 1038 (2nd Cir. 1983). New evidence is considered material if it is noncumulative, relevant and probative of the claimant's condition for the time period for which benefits were denied. Tirado, 842 F.2d at 598; Wiggins v. Barnhart, 2002 WL 1941467, 8 (S.D.N.Y. 2003). The time period for which benefits were denied was from April 25, 2003 to May 28, 2004. "The concept of materiality requires, in addition, a reasonable probability that the new evidence would have influenced the Secretary to decide claimant's application differently." quoting Tirado, 842 F.2d at 597; Rosado v. Sullivan, 805 F.Supp. 147, 157 (S.D.N.Y. 1992). The Second Circuit has held that when, "a diagnosis emerges

after the close of administrative proceedings that 'sheds considerable new light on the seriousness of [a claimant's] condition,' evidence of that diagnosis is material and justifies remand." <u>Lisa v. Sec. of Dept. of Health and Human Services</u>, 940 F.2d 40, 44 (2nd Cir. 1991); <u>Tolany v. Heckler</u>, 756 F.2d 268, 272 (2nd Cir. 1985).

The new evidence submitted by the plaintiff is not probative of the plaintiff's condition for the time period for which benefits were denied and would not have influenced the ALJ to decide the case differently. The progress notes from April 20, 2005 to January 1, 2006 do not indicate any additional significant limitations, nor do they shed considerable new light on the seriousness of the plaintiff's condition that would have influenced the ALJ to alter her functional capacity assessment. A radiology report of an MRI on plaintiff's left knee on December 14, 2005 revealed severe loss of articular cartilage of the medial joint compartment and moderate loss in the lateral joint compartment and of the patellofemoral joint space. Given the date of this report and that the findings of this report would not prevent the plaintiff from engaging in sedentary work, this report would not have influenced the ALJ's determinaiton.

The subsequent functional assessments made in 2005 would not have altered the ALJ's decision. The physical and mental medical assessments by Dr. Daniel Curtin on November 9, 2005 do not mention any condition or impairment that the ALJ did not consider in her decision. Furthermore, the ALJ relied on a physical examination report made by Dr. Curtin on May 19, 2003 to make her decision. In this report Dr. Curtin noted that Johnson's range of motion in his extremities was normal, his reflexes were 2+ and symmetrical, and he had 5 out of 5 motor strength and intact sensation. (Tr. 1053). The physical medical assessment by Dr. Veeraswamy Harinarayanan on May 23, 2005 also does not mention any condition or impairment that was not considered by the ALJ in reaching her decision.

**CONCLUSION**

For the reasons set forth above, I grant Defendant's motion for judgment on the pleadings, and dismiss plaintiff's complaint with prejudice.

**ALL OF THE ABOVE IS SO ORDERED.**

                                                s/Michael A. Telesca
                                                MICHAEL A. TELESCA
                                                United States District Judge

Dated:        Rochester, New York
                February 26, 2008